1999 ND 35

**Jay LANDIS, d/b/a Landis Farms, Plaintiff and Appellant,**

v.

**CNA INSURANCE, Defendant and Appellee.**

**Civil No. 980285**

Supreme Court of North Dakota.

Feb. 23, 1999.

John H. Moosbrugger, Moosbrugger, Dvorak & Carter, Grand Forks, ND, for plaintiff and appellant.

Laurie W. Meyer (argued) and David A. Engen, Robins, Kaplan, Miller & Ciresi L.L.P., Minneapolis, MN, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1.] Landis appealed from a judgment entered after the district court granted Continental Insurance Agency's motion for summary judgment. We affirm.

[¶ 2.] A fire destroyed a dwelling house situated on Landis's property between February 26, 1996 and early March 1996. The house was insured under an insurance policy issued by Continental. The policy's terms require the insured dwelling be used as a residence:

A.   Covered Property: Dwelling

We cover the house located at "your premises" which is described on the Declarations Page. However, it must be used principally as either a private residence or a private residence under construction.

The policy further states that if the property is vacant or unoccupied for a specified time prior to the loss, the liability limits will be reduced:

13.   Vacancy or Unoccupancy

If "vacancy" or "unoccupancy" extends beyond a period of 120 consecutive days, the Limits of Insurance applying to the "vacant" or "unoccupied" premises will be automatically reduced by 50%, unless we agree in writing to extend the period of permitted "vacancy" or "unoccupancy". . . .

"Unoccupancy" or "unoccupied" is defined in the policy as:

11.   [T]he condition of not being lived in or used; this condition exists even if the dwelling contains furnishings.

If any dwelling at "your premises" is occupied, all buildings at that premises will be considered occupied.

Landis submitted a claim for the damages sustained in the fire. Continental paid Landis $46,122.49, representing one-half of the liability limit, $1,200 for debris removal and $4,922.49 for personal property destroyed in the fire. Continental refused to pay Landis the remaining one-half of the insurance policy liability limit asserting the policy reduces recovery to one-half where a dwelling house had been unoccupied for 120 consecutive days prior to the loss.

[¶ 3.] Landis brought suit claiming he was entitled to the remaining one-half of the insurance policy liability limits. Continental moved for summary judgment. The district court concluded the record showed that the house was not "used" in the 120 day period prior to the loss, and therefore granted Continental's summary judgment motion.

[¶ 4.] The purpose of summary judgment is to allow for the prompt disposition of a case on the merits, without a trial, if no material dispute of fact exists or if only a question of law is involved. *Thedin v. United States Fidelity & Guar. Ins. Co.*, 518 N.W.2d 703, 705 (N.D.1994). This case turns on the interpretation of the insurance policy issued by Continental. "Determining the le-

gal effect of an insurance contract is generally a question of law for our court to decide" and is fully reviewable upon appeal. *Fisher v. American Family Mut. Ins. Co.*, 1998 ND 109, ¶ 5, 579 N.W.2d 599 (quoting *Sellie v. North Dakota Ins. Guar. Ass'n*, 494 N.W.2d 151, 156 (N.D.1992)).

[¶ 5.] Landis conceded the house had not been "lived in" during the relevant period, therefore the issue before the district court was whether the house was "used" during the 120 days prior to the fire. That issue must be considered in light of the language of Continental's insurance policy.

[¶ 6.] Our goal when interpreting insurance policies is to give effect to the mutual intention of the parties as it existed at the time of contracting. *Northwest G.F. Mut. Ins. Co. v. Norgard*, 518 N.W.2d 179, 181 (N.D.1994). Generally, this is done by first looking at the language of the contract itself. *Id.* Where a contract term is self-explanatory and subject to only one meaning, our inquiry is at an end. *Hanneman v. Continental Western Ins. Co.*, 1998 ND 46, ¶ 27, 575 N.W.2d 445.

[¶ 7.] The Continental policy defines "unoccupancy" or "unoccupied" as "the condition of not being lived in or used." Landis asserts the term "unoccupied" is ambiguous due to the policy's absence of a definition for "used," and therefore the term should be construed against the insurer. That is too simplistic a resolution of the issue.

[¶ 8.] When interpreting a contract, we look first to the language of the insurance policy. *Martin v. Allianz Life Ins. Co.*, 1998 ND 8, ¶ 9, 573 N.W.2d 823. We emphasized in *Thompson v. Nodak Mut. Ins. Co.*, 466 N.W.2d 115, 117 (N.D.1991), an insurance contract must be interpreted as a whole. Where the language of the policy is clear on its face, there is no room for construction. *Martin*, at ¶ 9. However, if coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract. *Id.*

[¶ 9.] The proper interpretation of the term "unoccupied," within the context of "not being used" is revealed in the policy's surrounding provisions. The Dwelling Covered Property Form of the policy states the property covered is a dwelling which "must be used principally as either a private residence or a private residence under construction." When this provision is read in conjunction with Section III(11), defining "unoccupancy" or "unoccupied," the policy is clear and unambiguous. We, therefore, conclude the policy reduces recovery by one-half where the dwelling house is unoccupied, meaning not lived in or used principally as either a private residence or a private residence under construction, for a period of 120 consecutive days prior to the loss.

[¶ 10.] Our interpretation of "unoccupied" is consistent with other jurisdictions. In several cases, courts have concluded the meaning of "occupancy" is dependant upon the nature or character of the building and the purpose for which the building was designed. *See, e.g., Benson v. City of Portland*, 119 Or.App. 406, 850 P.2d 416 (1993); *Carroll v. Tennessee Farmers Mut. Ins. Co.*, 592 S.W.2d 894, 895 (Tenn.Ct.App.1979) (citing *Cashen v. Camden Fire Ins. Ass'n*, 48 Tenn. App. 470, 348 S.W.2d 883 (1961); *Knight v. United States Fidelity & Guar. Co.*, 123 Ga. App. 833, 182 S.E.2d 693 (1971)). *See also Couch on Insurance* § 94:127 (3d ed.1997) (stating a "dwelling house is 'unoccupied' when it is not used as a residence—when it is no longer used for the accustomed and ordinary purposes of a dwelling or place of abode or when it is not the place of usual return or habitual stoppage"). *Cf. Independent Fire Ins. Co. v. Butler*, 362 So.2d 980 (Fla.Dist.Ct. App.1978).

[¶ 11.] Applying our interpretation after review of the record, we conclude there are no factual issues in dispute as to whether the house was unoccupied, meaning used principally as a private residence, in the 120 day period prior to the fire. The record reveals the dwelling house had not been lived in as a residence since 1994. Moreover, no one has stayed overnight in the house since the summer of 1995. August 31, 1995, the electric meter was removed and an affidavit from an employee working for the electric company reported no electricity had been used inside the house from October 1995

through February 1996. Both heat and water were shut off when the house was winterized in the fall of 1995. In addition, mail and phone service were not provided during this time period.

[¶ 12.] Landis argues the court erred in concluding the following incidents did not amount to the property being occupied: stops to warm up at the house during the 1995 hunting season, trips to the home to make sure it was secured and the installation of two new windows and replacing part of the ceiling. These constitute stop-overs, checking on the property and performing repairs, but not use of the house as a private residence.

[¶ 13.] The district court judgment is affirmed.

[¶ 14.] SANDSTROM, NEUMANN, MARING and KAPSNER, JJ., concur.