19 June 2000

No. 2--99--0863

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

__________________________________________________________________

DAVID LUNDQUIST and ) Appeal from the Circuit Court

KATHRYN LUNDQUIST, ) of Winnebago County.

)

Plaintiffs-Appellants, )

) 

v. ) No. 97--MR--208

)

ALLSTATE INSURANCE COMPANY, ) Honorable

) Galyn W. Moehring,

Defendant-Appellee. ) Judge, Presiding. 

_______________________________________________________________

PRESIDING JUSTICE BOWMAN delivered the opinion of the court:

Plaintiffs, David and Kathryn Lundquist (the Lundquists), filed a declaratory judgment action against defendant, Allstate Insurance Company (Allstate), to determine whether Allstate was required to provide coverage for the fire loss of a home owned by the Lundquists.  The parties filed cross-motions for summary judgment.  The trial court granted summary judgment in Allstate's favor, finding that no genuine issues of material fact existed with respect to whether the Lundquists' home was vacant or unoccupied for more than 30 consecutive days prior to the loss.  The Lundquists filed a timely notice of appeal.  They contend that the trial court erred because genuine issues of material fact existed as to whether (1) their home was "vacant" for more than 30 consecutive days before it was destroyed by fire, (2) their home was "unoccupied" for more than 30 consecutive days, and (3) they resided in the home.  The Lundquists further contend that the exclusion upon which Allstate relied is contrary to the requirements of the Illinois Insurance Code (215 ILCS 5/1 
et seq.
 (West 1998)) and, therefore, is void.  We agree with this last contention and also agree that genuine issues of material fact exist which preclude summary judgment in Allstate's favor.  Consequently, we reverse.  

The following facts are taken from the record.  The home at issue was located at 2775 Carlisle Drive in Rockford (home or Rockford home).  The Lundquists purchased the home in 1972 and lived there until August 1995, when they moved into a new house in Oregon, Illinois.  On October 26, 1996, the Lundquists signed a contract to sell the Rockford home to Raoul and Melanie Perez for $150,000.  The closing was to take place just prior to Christmas, 1996.  The home was destroyed by fire on December 5, 1996.  

Several individuals were charged with setting the fire.  There had been a previous incident of vandalism at the home in October 1996.  The Lundquists submitted a claim for damage caused in October 1996.  David Lundquist testified in his deposition that Allstate denied that claim because "nobody was living there full time."   

Allstate issued policy number 002028237 (policy) to the Lundquists for the Rockford home.  The policy's effective dates were February 26, 1996, through February 27, 1997.   According to David Lundquist's affidavit, he advised Allstate's agent, Robert Tucker, in July 1996 that he and his family would be moving into the Oregon house.  We note that the policy was amended in September 1996 to show that the Lundquists' address had changed to 5001 South Watertown Road, Oregon, Illinois. 

The policy contained an exclusion that stated that Allstate would not cover losses caused by "[v]andalism or [m]alicious mischief if your dwelling is vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief."  The policy did not define "vacant" or "unoccupied."  The policy defined "dwelling" as "a one, two, three, or four family building structure, identified as the insured property on the Policy Declarations, where you reside and which is principally used as a private residence."  The policy indicated that "you" or "your" referred to the insured or the insured's resident spouse. 

The Lundquists contended that the Rockford home was not vacant or unoccupied.  The affidavit of David Lundquist stated that three of his sons stayed overnight at the Rockford home on various weekends from August 1995 through the date of the fire.  Between October 1996 and the date of the fire, the Lundquists' sons stayed overnight at the Rockford home two or more weekends each month.  After performing repairs at the Rockford home, David Lundquist stayed overnight there at least once and possibly twice in mid-

November 1996.  The morning after he spent the night, Lundquist showered, shaved, and ate breakfast at the Rockford home.  Throughout October and November 1996, Kathryn Lundquist visited the Rockford home weekly.  She ate lunch there and cleaned the house.

At the time of the fire, the items that remained in the Rockford home included "paintings, decorations, house plants, tools, rakes, shovels, clothes, toothbrushes and other toiletries, chairs, blankets and other bedding, tables, kitchen appliances (including a refrigerator and two stoves), dishes, cooking pots, mirrors, a Gravely lawn tractor in the garage for lawn mowing, and a fully equipped weight room in the basement of the home."

The trial court ruled as follows on the parties' cross-motions for summary judgment:

"The court finds that there is no genuine issue of material fact, and that the fire loss was the result of vandalism or malicious mischief and that the subject dwelling was vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief.  Accordingly, the court grants Allstate's motion and denies plaintiffs' motion."

The Lundquists' appeal ensued.

A trial court properly grants summary judgment when the pleadings, depositions, and admissions on file, together with the affidavits, if any, reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2--1005(c) (West 1998).   A reviewing court should reverse an order granting summary judgment if the evidence shows that a genuine issue of material fact exists or if the judgment was incorrect as a matter of law.  
American Family Mutual Insurance Co. v. Hinde
, 302 Ill. App. 3d 227, 231 (1999).  We apply a 
de novo
 standard of review to the trial court's decision to grant summary judgment.  
Hinde
, 302 Ill. App. 3d at 231.

Before reaching the questions of whether genuine issues of material fact existed as to vacancy or occupancy of the subject home, we address the Lundquists' argument that Allstate's exclusion is contrary to the "Standard Fire Policy" in effect in this state (Standard Policy).  Pursuant to section 397 of the Illinois Insurance Code (215 ILCS 5/397 (West 1998)), the Director of Insurance has promulgated regulations that create a uniform policy for all fire insurance contracts.  All policies written in the State of Illinois must conform to the requirements of the Standard Policy.  50 Ill. Adm. Code §2301.100 (eff. March 17, 1961).  In other words, insurance policies may not provide less coverage than that set forth in the Standard Policy.  

With respect to an exclusion based on vacancy or unoccupancy, the Standard Policy provides that fire losses are not covered if "a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days" (Standard Policy, lines 28-35).   The Lundquists argue that Allstate's policy impermissibly narrows the coverage provided in the Standard Policy by shortening the allowable vacancy or unoccupancy period to 30 days instead of 60 days as provided in the Standard Policy.

Allstate responds that because the vandalism coverage in the Lundquists' policy is additional to the coverage required in the Standard Policy, it is free to restrict the coverage for losses caused by vandalism.  While we agree that Allstate may restrict the coverage it provides for nonfire vandalism losses, we disagree that it may do so for fires caused by vandalism.      

Allstate cites no authority to support its contention.  This issue is governed by section 2301.60 of the Administrative Code, which provides in relevant part:

"Appropriate forms of contracts of endorsements, whereby the interest in the property described in such policy shall be insured against other perils which the insurer is empowered to assume, may be used in connection with the Standard Policy.  
Such other contracts or endorsements attached to or printed thereon may contain provisions and stipulations inconsistent with the Standard Policy to the extent they are applicable only to such other perils.
"  (Emphasis added.)  50 Ill. Adm. Code §2301.60 (eff. March 17, 1961)). 

It is apparent from the Standard Policy that fire caused by vandalism is not an "other peril" for which Allstate could create an exclusion inconsistent with the Standard Policy.  The Standard Policy states that it applies to all direct loss by fire with the exception of certain perils (Standard Policy, lines 11-24).  The perils not covered include such things as fire loss caused by enemy attack, invasion, insurrection, rebellion, revolution, and civil war.  Standard Policy, lines 11-24.  Nowhere does the Standard Policy exclude coverage for fires caused by vandalism.  Thus, under the Standard Policy, fires caused by vandalism are covered, assuming all other conditions are met, unless the subject building is vacant or unoccupied for more than 60 consecutive days.  Allstate may not provide less coverage than this.  Consequently, we agree with the Lundquists that the vandalism exclusion as written in the Lundquists' policy conflicts with the Standard Policy.  

Any conflict between statutory and insurance policy provisions is resolved in favor of the statutory provisions.  
Cummins v. Country Mutual Insurance Co.
, 178 Ill. 2d 474, 483 (1997).  Rules and regulations promulgated pursuant to authority delegated by specific provisions of the Insurance Code have the force of statute.  
Margolin v. Public Mutual Fire Insurance Co.
, 4 Ill. App. 3d 661, 666 (1972). Thus, the policy must conform to the Standard Policy.  This means that Allstate may not exclude coverage for  fire loss under the vandalism exclusion unless Allstate establishes that the home was vacant or unoccupied for more than 60 consecutive days.

Next, we turn to the issues of vacancy and occupancy.  Courts have defined "vacant" as "generally empty or deprived of contents." 
Thompson v. Green Garden Mutual Insurance Co.
, 261 Ill. App. 3d 286, 291 (1994).  "Unoccupied" means "that no one was living in the dwelling or had actual use or possession of the dwelling at the time of the loss."  
Thompson
, 261 Ill. App. 3d at 291.  A house is unoccupied when "it has ceased to be a customary place of habitation or abode, and no one is living or residing in it."  44 Am. Jur. 2d 
Insurance
 §1220 (1982).  The interpretation of the words "vacant" and "unoccupied" as used in an insurance policy is a question of law, but whether the subject dwelling was vacant or unoccupied at the time of the loss is a question of fact.  
Thompson
, 261 Ill. App. 3d at 291; 
Kolivera & Pioneer Trust & Savings Bank v. Hartford Fire Insurance Co.
, 8 Ill. App. 3d 356 (1972).

We agree with the Lundquists that the trial court erred when it determined that no genuine issue of material fact existed with respect to whether the Lundquists' home was vacant.  The Lundquists presented sufficient facts to raise an issue of material fact as to whether the Rockford home was vacant during the relevant time period under the policy.  While the home did not contain much furniture, according to David Lundquist's affidavit it did contain chairs, tables, appliances, weightlifting equipment, plants, dishes, pots, and decorative items.   In addition, there were personal items such as toiletries, clothes, and bedding.  The Lundquists maintained gas and electrical service to the Rockford home up until the time of the fire.  The cases cited by Allstate in support of its argument are factually distinguishable because all of them involved lesser quantities of furniture and personal items than were present in the Rockford home.  For these reasons, we conclude that a question of fact existed as to whether the home was vacant. 

This brings us to the Lundquists' assertion that a question of fact existed as to whether the Rockford home was unoccupied.  Clearly, the question of whether a particular house is occupied depends upon the specific facts of each case.  Our research has revealed no Illinois case involving a factual situation similar to the instant case.  It is apparent, however, when we apply the definition of "unoccupied" to the facts of the case before us, that the Lundquists raised a question of fact on this issue that precludes summary judgment for Allstate. 

In 
Thompson
, the court stated that the word "unoccupied" or the phrase "vacant or unoccupied" when used to describe an exclusion from coverage means "that no one was living in the dwelling or had actual use or possession of the dwelling at the time of the loss."  
Thompson
, 261 Ill. App. 3d at 291.   It is undisputed that the Lundquists and their family members were present in the Rockford home on several occasions during the 60 days prior to the fire.  During November 1996 plaintiff David Lundquist stayed overnight at least once and ate breakfast at the Rockford house.  Between October 1996 and the date of the fire, the Lundquists' sons also stayed overnight two or more weekends a month.  It is also undisputed that the Lundquists still owned the Rockford home and had unlimited access to it during the relevant time period.  Although they had agreed to sell the home, the closing had not yet taken place at the time of the fire. The Lundquists never relinquished possession of the Rockford home. These facts are sufficient to raise a question as to whether someone lived in or had actual use or possession of the home during the 60 days before the fire.  

Last, we consider Allstate's argument that the policy does not provide coverage because the Lundquists did not reside in the Rockford home.  The policy stated that it covered the insureds' "dwelling," which the policy defined as "[a] one, two, three or four family building structure, identified as the insured property on the Policy Declarations, where you reside and which is principally used as a private residence."  The policy defined "you" and "your" as "the person named on the Policy Declarations as the insured and that person's resident spouse."  The policy did not define "reside."

Allstate urges that the term "reside" is not ambiguous.  Allstate asserts that the term has two components: physical presence in the subject dwelling and the intention of remaining in that dwelling.  Allstate contends that the sale of the Rockford home and the relocation to the Lundquists' new home established their intention to reside elsewhere.  In support of this contention Allstate relies on
 
Heniser v. Frankenmuth Mutual Insurance Co.
, 449 Mich. 155, 534 N.W.2d 502 (1995), 
Georgia Farm Bureau Mutual Insurance Co. v. Kephart
, 211 Ga. App. 423, 439 S.E.2d 682 (1993), and 
Doyle v. Members Mutual Insurance Co.
, 679 S.W.2d 774 (Tex. Ct. App. 1984). 

In response, the Lundquists equate residence with occupancy and argue that they did reside in the Rockford home.  They also argue that the term "reside" is ambiguous as used in the policy.  They assert that if Allstate intended "reside" to mean continuous physical presence, it could have defined the term that way in the policy.  The Lundquists rely on 
FBS Mortgage Corp. v. State Farm Fire & Casualty Co.
, 833 F. Supp. 688 (N.D. Ill. 1993), to support their contention that the term "reside" is ambiguous and thus must be construed in their favor.

After reviewing the cases cited by both parties, we conclude that the cases cited by Allstate are factually dissimilar from the case before us and the reasoning of 
FBS
 is more persuasive.  None of the cases upon which Allstate relies involve a factual situation in which the named insureds agreed to sell the subject home, moved to a new home, but returned to the subject home on several occasions, which included at least one overnight stay.  

In 
Heniser
, the plaintiff submitted a claim for the fire loss of a vacation home that he had sold pursuant to a land contract.  The court emphasized the sale of the property, noting that by signing the land contract the plaintiff demonstrated his intent to no longer reside at the house in the future and relinquished the right to do so.  The court also noted the possibility of a different outcome "if the insured continues to retain the right to reside at the residence premises, such as the period between when an insured places his home for sale but has not yet completed the transaction."  
Heniser
, 449 Mich. at 160, 534 N.W.2d at 504.  Unlike 
Heniser
, the Lundquists had agreed to sell the Rockford home but had not completed the closing.  They had not relinquished their right to reside in the house.  Consequently, 
Heniser
 does not lead us to conclude that the Lundquists did not reside in the Rockford home.

Kephart
 is also distinguishable.  The insured in that case had lived in a different state for the eight months before her home was destroyed by fire.  There was no evidence that she had returned to the home during that time period.  Further, the insurance policy at issue in 
Kephart
 required that the residence premises be the only premises where the insured maintained a residence.  
Kephart
, 211 Ga. App. at 424, 439 S.E.2d at 683.  Allstate's policy contained no such limitation.

Last, we decline to rely on 
Doyle
.  That case involved the interpretation of the phrase "while occupied by the Insured principally for dwelling purposes."  It did not address the term "reside."  Further, as in the other cases Allstate cited, there was no indication that the insureds had returned to the subject property after they had moved to a new house.  
Doyle
, 679 S.W.2d at 775.

We agree with the analysis of the court in 
FBS
.  In 
FBS
, the insured was incarcerated when his home was destroyed by fire.  His insurer, State Farm, claimed that the home did not qualify as the insured's "residence premises" because the insured did not reside there for the eight months prior to the fire, while he was incarcerated.  The court held that the term "residence premises" was ambiguous and State Farm's interpretation of the term was unenforceable because it contradicted the Standard Policy of the State of Illinois.  
FBS
, 833 F. Supp. at 695-696.

The court in 
FBS
 analyzed Illinois authority and concluded that, under Illinois law, a person may reside in a particular location without being continuously physically present (
FBS
, 833 F. Supp. at 693, citing 
Coriasco v. Hutchcraft
, 245 Ill. App. 3d 969 (1993)) and may have more than one residence (
FBS
, 833 F. Supp. at 693, citing 
Bastian v. Personnel Board
, 108 Ill. App. 3d 672, 678 (1982)).  The court in 
FBS
 further concluded that the term "residence premises" was ambiguous because it did not establish when and for how long the insured had to be physically present at the subject premises in order to "reside" there.  
FBS
, 833 F. Supp. at 693.  Because the ambiguous term had to be construed in the insured's favor, State Farm could not deny coverage based on the definition of "residence premises."  
FBS
, 833 F. Supp. at 695.

We agree that the term "reside" as used in Allstate's policy is ambiguous.  As the court said in 
FBS
, while it is clear that physical presence is a necessary component of residence, it is unclear what degree of physical presence is necessary before someone is deemed to reside in a particular location.  We believe this provision is subject to more than one reasonable interpretation and, therefore, is ambiguous.  
Employers Insurance v. Ehlco Liquidated Trust
, 186 Ill. 2d 127, 141 (1999).  "Where competing reasonable interpretations of a policy exist, a court is not permitted to choose which interpretation it will follow. [Citation.]  Rather, in such circumstances, the court must construe the policy in favor of the insured and against the insurer that drafted the policy."  
Ehlco
, 186 Ill. 2d at 141.  Accordingly, we hold that Allstate cannot deny coverage based upon its definition of "reside."

For the reasons stated, we conclude that the trial court erred in granting summary judgment for Allstate.  We further conclude that the trial court's order denying the Lundquists' motion for summary judgment shall stand.  Because we have determined that a genuine issue of material fact exists on the issues of vacancy and occupancy, the Lundquists are not entitled to judgment as a matter of law.

The judgment of the circuit court of Winnebago County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

RAPP and GALASSO, JJ., concur.